IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03540

CAROLINE CHADIMA,
Plaintiff

v.

CORECIVIC, INC. a Maryland corporation,
Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Caroline Chadima, by and through her attorneys, Miller & Law, PC, and for her Complaint against the Defendant, CoreCivic, Inc., states as follows:

### I. INTRODUCTION

1. This action is brought to redress the Defendant's violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-634 (the "ADEA"), as well as Defendant's violation of Colorado common law prohibiting the wrongful termination of employment in violation of public policy.

2. Specifically, Plaintiff, who was 61 years old at the time of her still unexplained termination, alleges that Defendant engaged in unlawful employment practices on the basis of her age by terminating her employment in violation of the ADEA, as well as in violation of Colorado public policy.

### II. PARTIES

3. Plaintiff, Carolina Chadima ("Plaintiff" or "Ms. Chadima"), is an individual with a residential address of 8225 Fairmount Drive #3-106, Denver, Colorado 80247.

4. Defendant, CoreCivic, Inc. ("Defendant" or "CoreCivic"), is a Maryland corporation and is a publicly-traded real estate investment trust; its headquarters are located at

1

5501 Virginia Way, Brentwood, Tennessee 37027, and its principal place of business in Colorado is located at 570 W 44th Ave., Denver, Colorado 80216.

5. At all relevant times, Defendant has continuously had at least 20 employees; upon information and belief, CoreCivic employed approximately 15,000 employees as of November 2019.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of §§ 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

### III.   JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This action is authorized and instituted pursuant to the ADEA. This Court has supplemental jurisdiction of Plaintiff's state law claims, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a). The unlawful employment practices and defamatory acts alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

### IV.   ADMINISTRATIVE PREREQUISTIES

8. Prior to filing this Complaint, Plaintiff complied with all procedural prerequisites for bringing this lawsuit. On May 11, 2020, less than 300 days after her October 7, 2019 termination from CoreCivic, Plaintiff timely filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

9. Plaintiff was issued a Notice of Right to Sue by the EEOC dated September 3, 2020, which she received on September 8, 2020.

10. As this Complaint has been filed within 90-day period following Plaintiff's receipt of the Notice of Right to Sue, she has satisfied all procedural prerequisites for suing Defendant in federal court under 42 U.S.C. §2000e-5(f)(1).

## V.     GENERAL ALLEGATIONS

11. CoreCivic is largest owner of partnership correctional, detention and residential reentry facilities in the United States.

12. CoreCivic provides corrections and detention management services, offering various rehabilitation and reentry services, including academic, vocational, faith-based and substance use disorder treatment.

13. CoreCivic operates the Fox Facility and Training Center (the "Fox Facility"), a community corrections center located at 570 West 44th Avenue, Denver, Colorado 80216.

14. Ms. Chadima was hired by CoreCivic to be a Counselor at the Fox Facility, and she commenced her employment on December 15, 2016.

15. On January 1, 2017 Ms. Chadima was promoted to Treatment Manager/Supervisor.

16. On April 22, 2019, the day that Ms. Chadima celebrated her 61st birthday, CoreCivic's Operations Director, Michael Koob ("Mr. Koob"), remarked to her, "I did not know you were 60, I thought you were in your 40's."

17. Following Mr. Koob's age-related remark, Ms. Chadima's work environment quickly deteriorated, and increasingly became intolerable.

18. Mr. Koob thereafter required Ms. Chadima to take on the roles of two additional jobs - Therapist and Case Manager – without pay, which forced Ms. Chadima to regularly work 60 to 70 hours per week without full compensation.

19. CoreCivic began engaging in heightened monitoring and scrutiny of Ms. Chadima,

including writing her up for an extremely minor matter that CoreCivic admits "was not a big deal."

20. More and more frequently, Ms. Chadima was treated in a disparate fashion by CoreCivic as compared with her younger, similarly situated peers (collectively, her "Younger Colleagues"), including Aisha Alvaredo, Michael Asher, AnnaMaria Barbelso, Dawn Cubbage, Michael Gardner, Ericka Gillespie, Rory Gryniewicz, Maryann Herman, Vanessa Joseph, Judith Kunze, Victoria Longstrom, Dino Martinez, Terence Matthews and Arik Yox.

21. The disparate manner in which CoreCivic treated Ms. Chadima on the basis of her age was manifested in numerous contexts.

22. Whereas Ms. Chadima was written up for a minor matter that "was not a big deal," her Younger Colleagues avoided any such discipline at the hands of common supervisors and/or decisionmakers, and CoreCivic actively participated in covering up the missteps of these Younger Colleagues.

23. For example, not only did the company not discipline Mr. Mathews and his staff regarding incidents such as the theft of money from residents' mail at the Fox Facility, CoreCivic actively participated in covering up this misconduct.

24. CoreCivic refused to raise Ms. Chadima's salary as it did for her Younger Colleagues; even Ms. Chadima's direct reports were awarded non-merit raises, across the board.

25. CoreCivic severely limited Ms. Chadima's budget and her ability to hire contract staff, unlike her Younger Colleagues.

26. In denying Ms. Chadima's requests that she be allowed to hire contract staff, Mr. Koob and the Managing Director, Shannon Carst ("Ms. Carst"), told her that "we can't afford it."

27. CoreCivic refused to take action to protect Ms. Chadima and her staff, while promptly addressing all comparable concerns raised by her Younger Colleagues.

28. CoreCivic denied Ms. Chadima's repeated requests, made for the safety of Ms. Chadima and her staff, that cameras be installed in the first-floor group room in the Fox Facility ("Group Room D").

29. The Fox Facility houses convicted felons, many of whom are violent offenders, and each and every one of whom was incarcerated in connection with one or more drug-related crimes.

30. Ms. Chadima complained that the lack of cameras in Group Room D was a significant safety hazard to herself, her staff, the guards and the inmates, and that it directly violated CoreCivic's correctional services contract with the State of Colorado (the "State Contract"), which required that cameras be installed in all group rooms and common areas of the Fox Facility.

31. The lack of cameras in Group Room D further violated the public policy considerations embodied in the State Contract, which mandated that cameras be installed in all group rooms and common areas of the Fox Facility for the purpose of reducing safety hazards and protecting the facility staff – including but not limited to counselors such as Ms. Chadima, as well as guards - and inmates, as well as for the purpose of maintaining security in the Fox Facility and preventing illegal conduct, riots or escapes.

32. The lack of cameras in Group Room D further violated laws, regulations and/or rules relating to safety and security in such facilities, including the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, *et seq*.

33. Given the lack of security cameras, it was not a coincidence that drugs were frequently discovered as having been hidden in Group Room D.

34. In response to Ms. Chadima's complaints about the lack of cameras in Group Room D, Mr. Koob, Ms. Carst and Mr. Mathews each asserted that it would be "too expensive" to install

5

cameras.

35. CoreCivic's stated rationale for not increasing Ms. Chadima's compensation, for not allowing her to hire contract staff, and for not installing security cameras – a purported lack of funds – was false.

36. CoreCivic's President, Damon Hininger ("Mr. Hininger"), stated in November 2019 at a CoreCivic investor's meeting that "generally, if I look at our overarching enterprise . . . we're actually doing pretty good . . . generally, we're in good shape and have been holding our own."

37. Mr. Hininger's remarks at the November 2019 CoreCivic investor's meeting specifically revealed the Defendant's assertions to Ms. Chadima about not having sufficient funds to be able to afford hiring extra workers to be false; he stated: "as a reminder . . . on our federal contracts, which is about half our business, if those wages go up, we actually get reimbursed, dollar-for-dollar, through (inaudible) adjusted general federal contract. So even if the wages go up, that is actually cost that we can get recouped from the federal government in those contracts, so that's a nice provision on about half of our business."

38. In retaliation for Ms. Chadima's complaints about the lack of cameras in Group Room D, CoreCivic further ratcheted up its targeting and disparate treatment of Ms. Chadima.

39. In June 2019, in the context of discussing one of Ms. Chadima's complaints about not having sufficient staffing, after she lamented, "I don't know how much more of this my staff and I can take," Ms. Carst remarked, "I'm surprised that you have lasted this long."

40. Ms. Carst then shocked Ms. Chadima by suggesting that Ms. Chadima furnish a copy of her resume, so that Ms. Carst could "pass it around."

41. CoreCivic also declined to provide Ms. Chadima with the same level or extent of

management training as it did for her Younger Colleagues.

42. CoreCivic also refused to provide Ms. Chadima with access to her program budget, as it provided to her Younger Colleagues for their respective program budgets.

43. Ms. Chadima had to beg Mr. Koob for information relating to her program budget and to provide funding for her program, whereas her Younger Colleagues were readily granted access to such information and funding.

44. Ms. Chadima repeatedly complained to Mr. Koob and others about all of the foregoing disparate treatment during mid-2019.

45. CoreCivic ignored Ms. Chadima's repeated complaints, and it instead responded by escalating its retaliation even further.

46. CoreCivic's HR Director performed an audit of Ms. Chadima's program and determined that the corporation was not providing any meaningful assistance to Ms. Chadima.

47. Notwithstanding the aforementioned determination, Ms. Chadima thereafter was not provided with training, whereas CoreCivic provided additional training to her Younger Colleagues.

48. CoreCivic's retaliation reached a new level on July 7, 2019, when it abruptly suspended Ms. Chadima without explanation.

49. CoreCivic had no legitimate reason for placing Ms. Chadima on a suspension.

50. At the time of the suspension, Ms. Chadima had been adequately performing her duties for CoreCivic; in fact, she had excelled in her role as Treatment Manager/Supervisor.

51. Throughout her tenure at CoreCivic, Ms. Chadima had performed her job duties satisfactorily despite a lack of training for her position and despite a lack of support from the Managing Director and the Operations Director.

52. All of Ms. Chadima's performance reviews at CoreCivic had been graded as "passing," "very good," or "excellent."

53. Ms. Chadima had even been issued letters and gift cards of appreciation for her good work by Ms. Carst.

54. Ms. Chadima had only been issued a single write-up during her entire 33 months of employment at Core Civic (referenced *infra*).

55. Immediately upon being placed without explanation on non-disciplinary paid administrative leave on July 7, 2019, Ms. Chadima was forced to surrender her badge and keys, and she was escorted off the facility grounds.

56. CoreCivic continued Ms. Chadima's suspension for almost three full months while it claimed that it was conducting "an investigation."

57. On July 18, 2019, Ms. Chadima met with Kendra Golden ("Ms. Golden"), who identified herself as a "contracted investigator" for CoreCivic, and she proceeded to answer questions from Ms. Golden for approximately 90 minutes.

58. Ms. Golden's questions concerned topics dating back to the beginning of Ms. Chadima's employment at CoreCivic in December 2016, and largely covered issues that had never before been brought up with Ms. Chadima by anyone else at CoreCivic, as well as issues that Mr. Koob had previously reviewed and dismissed for lack of probable cause.

59. Ms. Golden very briefly addressed with Ms. Chadima new, false, allegations that had been fabricated by a resident ("K.S."); those allegations – which involved K.S.'s false claim that he had been struck by a door when Ms. Chadima had walked out of Group Room D (a claim that would have been immediately revealed as false had CoreCivic actually installed cameras in Group Room D as Ms. Chadima had been requesting) - were subsequently reviewed by the State

8

and dismissed.

60. Ms. Chadima reiterated her concerns of age discrimination to Ms. Golden on July 18, 2019.

61. Ms. Chadima provided a 10-page written follow-up submission to Ms. Golden on July 24, 2019 that included additional details and information underlying Ms. Chadima's numerous concerns and complaints.

62. Ms. Chadima did not receive a response to her written submission from Ms. Golden or anyone at CoreCivic.

63. Ms. Chadima's written submission to Ms. Golden is not contained in the personnel file that CoreCivic maintained for Ms. Chadima.

64. Without explanation, on October 7, 2019, while Ms. Chadima remained suspended, CoreCivic terminated her employment.

65. CoreCivic had no legitimate reason for terminating Ms. Chadima's employment.

66. CoreCivic never provided Ms. Chadima with any termination paperwork.

67. Although Ms. Chadima requested that CoreCivic explain the reason for her suspension and termination, and to disclose the outcome of its "investigation," CoreCivic refused to provide any information in response to these requests.

68. Even today, roughly 14 months after the termination, CoreCivic still has not informed Ms. Chadima why she was suspended and then terminated.

69. The personnel file that was maintained by CoreCivic regarding Ms. Chadima contains no information as to the reason for her suspension or termination.

70. On information and belief, CoreCivic terminated Ms. Chadima's employment as a result of her age.

71. On information and belief, Ms. Chadima's complaints of age discrimination also factored into CoreCivic's decision to terminate her employment, and was in retaliation therefor.

72. On information and belief, Ms. Chadima's safety- and compliance-related complaints concerning the lack of security cameras in Group Room D also factored into CoreCivic's decision to terminate her employment, and was in retaliation therefor.

73. On information and belief, CoreCivic has continued its retaliation against Ms. Chadima even after it terminated her employment.

74. On information and belief, CoreCivic provided defamatory information to prospective employers of Ms. Chadima, which caused her to be turned down for multiple jobs between October 2019 and February 2020.

75. Despite being fully qualified for multiple positions to which she applied between October 2019 and February 2020, Ms. Chadima often received no serious consideration, and scheduled interviews were abruptly rescinded, shortly after the prospective employer had been made aware of Ms. Chadima's previous employment with CoreCivic.

76. As a direct and proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has incurred substantial damages in an amount to be determined at trial.

## VI.     CLAIMS FOR RELIEF

### First Claim For Relief
*(Intentional Discrimination Based on Age, in Violation of the ADEA)*

77. Plaintiff restates and incorporate herein by this reference all above-stated paragraphs as fully set forth herein.

78. Plaintiff satisfactorily performed the functions and requirements of her job at all times relevant to this Complaint.

79. Defendant, either directly or by and through its agents, discriminated against Plaintiff because of her age.

80. Age is not a bona fide occupational qualification for the position most recently held by Plaintiff at CoreCivic.

81. The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment as is prohibited by 29 U.S.C. § 623(a)(1).

82. Through Defendant's unlawful employment practices, including, without limitation, its placement of the Plaintiff on roughly a three-month suspension and its termination of the Plaintiff's employment, Defendant denied the Plaintiff equal terms and conditions of employment and otherwise adversely affected her employment status because of her age.

83. Defendant is liable for the acts and/or omissions of its agents and employees.

84. Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

85. As a direct result of Defendant's discriminatory actions described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## Second Claim For Relief
*(Retaliation for Plaintiff's Complaints of Intentional Discrimination Based on Age, in Violation of the ADEA)*

86. Plaintiff restates and incorporate herein by this reference all above-stated paragraphs as if fully set forth herein.

87. Plaintiff was subjected to retaliation by Defendant for raising complaints about discriminatory actions in the workplace, in violation of the ADEA, including through its placement of the Plaintiff on roughly a three-month suspension and its termination of the Plaintiff's employment,

88. Plaintiff's protected conduct was a motivating factor in Defendant's retaliatory conduct, including but not limited to its decisions to place her on roughly a three-month suspension and to terminate her employment.

89. Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

90. As a consequence of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, irreparable injury and damages.

## Third Claim For Relief
*(Wrongful Termination in Violation of Public Policy for Refusal to Comply with an Improper Directive)*

91. Plaintiff restates and incorporate herein by this reference all above-stated paragraphs as if fully set forth herein.

92. During the course of Plaintiff's employment with the Defendant:

   a. Defendant directed the Plaintiff to violate one or more statutes, rules, or regulations relating to public health, safety, or welfare;

   b. Defendant undermined one or more public policies relating to Plaintiff's basic

12

      responsibility as a citizen; and/or

c. Defendant prevented the Plaintiff from exercising an important work-related right or privilege.

93. In particular:

a. Defendant directed the Plaintiff to violate one or more statutes, rules, or regulations relating to public health, safety, or welfare, by directing that Plaintiff disregard the regulatory and contractual requirement that security cameras be installed in Group Room D by providing classes to the Fox Facility inmates in the utter absence of such safety and security precautions, as set forth, *infra*;

b. Defendant undermined one or more public policies relating to Plaintiff's basic responsibility as a citizen, by directing that she disregard the regulatory and contractual requirement that security cameras be installed in Group Room D by providing classes to the Fox Facility inmates in the utter absence of such safety and security precautions, as set forth, *infra,* as well as by retaliating against her when she reported her concerns about this obvious safety and security violation; and/or

c. Defendant prevented the Plaintiff from exercising an important work-related right or privilege; specifically, to be able to report such safety and security violations without fear of reprisal, and to insist on being able to safely perform her duties in a job environment in which the risk of physical harm and/or violence has been minimized to the greatest extent possible.

94. Plaintiff refused to comply with one or more of the Defendant's directives because she reasonably believed that to do so (i) would have been illegal, (ii) would have been contrary to her duties as a citizen, and/or (iii) would have violated her legal rights or privileges as a worker.

95. Defendant was aware, or reasonably should have been aware, that the Plaintiff's refusal to comply with the Defendant's directives was based on the Plaintiff's reasonable beliefs that to do so (i) would have been illegal, (ii) would have been contrary to her duties as a citizen, and/or (iii) would have violated her legal rights or privileges as a worker.

96. Defendant terminated the Plaintiff's employment because of, and in retaliation for, the Plaintiff's refusal to comply with the Defendant's directives.

97. As a direct and proximate result of the Defendant's wrongful and retaliatory

termination of her employment, the Plaintiff has been damaged in an amount to be determined at trial.

### Fourth Claim For Relief
*(Wrongful Termination in Violation of Public Policy for Exercising a Right or Performing a Public Duty)*

98. Plaintiff restates and incorporate herein by this reference all above-stated paragraphs as if fully set forth herein.

99. During the course of Plaintiff's employment with the Defendant:

   a. Plaintiff exercised a statutory, regulatory or rule-based right relating to public health, safety, or welfare;

   b. Plaintiff performed a public duty relating to Plaintiff's basic responsibility as a citizen; and/or

   c. Plaintiff exercised an important work-related right or privilege.

100. In particular:

   a. Plaintiff made complaints to the Defendant regarding the lack of security/surveillance cameras in Group Room D that directly related to public health, safety, or welfare, and she made complaints that Defendant was legally required to install cameras in that area of the Fox Facility, because Plaintiff reasonably believed that she had a right to follow statutes, regulations and/or rules (including the PREA) regarding safety and security in the Fox Facility;

   b. Plaintiff performed a public duty relating to her basic responsibility as a citizen by complaining to the Defendant about the safety and security threats in Group Room D resulting from the lack of security/surveillance cameras in that area of the Fox Facility, and by complaining that Defendant was legally required to install cameras in that area, because Plaintiff reasonably believed that she had a right to perform this public duty under these circumstances and/or

   c. Plaintiff exercised her right or privilege as a worker by complaining to the Defendant about the safety and security threats in Group Room D resulting from the lack of security/surveillance cameras in that area of the Fox Facility, and by complaining that Defendant was legally required to install cameras in that area, because Plaintiff reasonably believed that she had a right or privilege to do so under the circumstances.

101. Fundamental public policy prohibits the retaliatory discharge of employees such as

Plaintiff who engage in such complaints (also known as "whistle-blowing") that are in the public interest.

102.   Defendant was aware, or reasonably should have been aware, that the Plaintiff reasonably believed (i) that she had a right to follow the foregoing statutes, regulations and/or rules that directly related to public health, safety, or welfare, (ii) that she had a right to perform the foregoing public duty relating to her basic responsibility as a citizen, and/or (iii) that she had the foregoing right or privilege as a worker that she exercised.

103.   Defendant terminated the Plaintiff's employment because of, and in retaliation for, (i) the Plaintiff's exercise of her right to follow the foregoing statutes, regulations and/or rules that directly related to public health, safety, or welfare, (ii) the Plaintiff's exercise of the foregoing right to perform a public duty relating to her basic responsibility as a citizen, and/or (iii) the Plaintiff's exercise of her foregoing right or privilege as a worker.

104.   As a direct and proximate result of the Defendant's wrongful and retaliatory termination of her employment, the Plaintiff has been damaged in an amount to be determined at trial.

**Additional Claims For Relief**

105.   Plaintiff reserves the right to add additional claims after discovery.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant, and award her the following relief, to the fullest extent allowed by law:

i. Actual monetary damages for all injuries suffered by Plaintiff in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;
ii. Liquidated damages on her ADEA claim in an amount to be determined at trial;
iii. Damages for Defendant's wrongful termination of Plaintiff's employment, including but not limited to her resulting lost wages and benefits;
iv. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;
v. Pre- and post-judgment interest at the highest lawful rate; and
vi. Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 1st day of December 2020.

**MILLER AND LAW, P.C.**

**By: /s/ David J. Meretta**
David J. Meretta, #44409
1900 W. Littleton Blvd.
Littleton, CO 80120
(303) 722-6500
djm@millerandlaw.com

Plaintiff's address:

8225 Fairmount Drive #3-106
Denver, CO 80247